IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALTER INTERRANTE,<br>    Plaintiff, | : | |
| | : | |
|   v. | : | Civil No. 2:19-cv-00263-JMG |
| | : | |
| MERCK & CO., INC.<br>    Defendant. | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                      September 22, 2021

    Defendant Merck & Co, Inc. ("Merck") fired Plaintiff Walter Interrante after he jumped into an energized trash compactor. Interrante now claims that Merck violated the Americans with Disabilities Act (ADA) and the Pennsylvania Human Relations Act (PHRA). Before the Court is Merck's motion for summary judgment. For the following reasons, summary judgment will be granted in Merck's favor.

**I.  FACTUAL BACKGROUND**

    Interrante began working at Merck in 2002. Def.'s Statement of Facts ¶ 1, ECF No. 36-2 [hereinafter "DSOF"]; Pl.'s Resp. to Def.'s Statement of Facts ¶ 1, ECF No. 41 [hereinafter "PRSOF"]. He became a support associate in 2013. DSOF ¶ 12; PRSOF ¶ 12. As a support associate, Interrante was tasked with "[m]onitor[ing] facility conditions . . . and perform[ing] general tasks to ensure the environment and equipment are maintained in full regulatory compliance." Interrante Dep. Def.'s Ex. 2, at DEF00788, ECF No. 36-5. He was also expected to follow "written procedures and direction of Management" and comply with Merck's "safety guidelines and procedures." *Id.*

Interrante requested—and Merck provided—various accommodations throughout his employment. For example, Interrante was not required to wear face masks or respirators due to his claustrophobia. *See* DSOF ¶ 39; *see also* Interrante Dep. 120:7–21, ECF No. 36-4. Nor was he required to operate any "powered industrial trucks." *See* DSOF ¶ 39; Interrante Dep. 98:12–14; *see also* Interrante Dep. Def.'s Ex. 6, at DEF01183, ECF No. 36-5.

At issue here are accommodations for Interrante's learning disability. On September 27, 2017, the Pennsylvania Office of Vocational Rehabilitation Services evaluated Interrante. DSOF ¶¶ 44–45; PRSOF ¶¶ 44–45. Dr. Donald Masey, the evaluating physician, noted that "[n]ewer and unfamiliar job duties may be difficult for Mr. Interrante due to his level of cognitive functioning, neuropsychological deficits[,] . . . specific mathematics learning disorder, and mental health status." Interrante Dep. Def.'s Ex. 8, at Interrante-000148, ECF No. 36-7; *see also* DSOF ¶ 46. As such, he recommended that Interrante: (1) "[b]e provided written assignments of his daily work duties with tasks broken down into smaller steps"; (2) "[b]e provided with extra training and job coaching if a new work duty is introduced"; (3) "[b]e reminded to slow down and not work so fast; be encouraged to focus on accuracy over speed"; and (4) "[h]ave access to the employee assistance program for counseling regarding work related stress and coping strategies." Interrante Dep. Def.'s Ex. 8, at Interrante-000149; *see also* DSOF ¶ 47.

Interrante reviewed Dr. Masey's report with Merck's occupational health nurse practitioner. DSOF ¶¶ 30, 50; PRSOF ¶¶ 30, 50; *see also* Interrante Dep. 118:2–18. Merck ultimately provided Interrante with task lists but did not do so on a regular basis. *See* Interrante Dep. 55:3–7. At times, Interrante's managers would "just add work to [his] assignment sheet," creating an assignment process that "wasn't always very structured." *Id.* at 55:7–10, 121:13–23. Interrante also received limited training on how to use a trash compactor at Merck's facility. *Id.*

2

at 59:2–13.

On April 19, 2018, Interrante discovered a jam in that trash compactor. DSOF ¶ 53; PRSOF ¶ 53. He reported it to his manager, Jason Nash, who instructed Interrante not to operate the machine. DSOF ¶ 54; PRSOF ¶ 54. Nevertheless, Interrante returned to the compactor and saw a co-worker, Linda Bundt, trying to clear the jam with a pole. DSOF ¶ 56; PRSOF ¶ 56. Interrante was afraid that Bundt, who was leaning over a guardrail, would be pulled into the machine. DSOF ¶ 59; PRSOF ¶ 59. Hoping to assist Bundt, Interrante climbed into the compactor to remove the obstruction. DSOF ¶ 67; PRSOF ¶ 67.

The entire episode was captured on a surveillance video. *See* Def.'s Mem. Ex. G, ECF No. 36-22. While the footage shows another employee, Ken Proctor, near the compactor, only Interrante entered the machine. *See id.*; *see also* Interrante Dep. 137:18–24.

Following an investigation, Merck terminated Interrante for violating the company's safety policy. Interrante Dep. Def.'s Ex. 24, at DEF00714, ECF No. 36-12. Merk suspended Bundt and Proctor for their conduct. DSOF ¶ 77; PRSOF ¶ 77.

Interrante later filed a grievance against Merck. DSOF ¶ 91; PRSOF ¶ 91. After four days of testimony, the arbitrator denied Interrante's grievance and upheld his termination. DSOF ¶ 93; PRSOF ¶ 93. The arbitrator concluded as follows:

> The Grievant was working under a [Duty Disposition Letter] that informed his supervisors that he was to be allowed to focus on one task at a time and not be rapidly moved from task to task. The record did not show that these instructions would have prevented this incident. The Grievant walked up stairs to speak with Supervisor Nash regarding the jammed compactor. He was given specific instructions to not use the compactor and to put any trash in the trash bin. Despite these clear instructions, the Grievant climbed into the energized trash compactor to dislodge a pallet, albeit because he believed that Ms. Bundt might hurt herself if she continued to prod the jammed compactor. His decision to climb inside the compactor was his and clearly contrary to the explicit instruction of Supervisor

3

> Nash, given just moments before. There is no indication that the Grievant was in the midst of multi-tasking or confused as to his task sequence for the evening. His actions were entirely his own and the Company cannot be expected to continue the employment of an employee who is working in a manufacturing facility, which has powerful machines and potentially dangerous substances, who fails to exercise the judgment necessary to keep himself and his co-workers safe.

Def.'s Mem. Ex. B, at Interrante-000082, ECF No. 36-17. He further noted that "nothing was shown that would have prevented the April 19, 2018 incident or assure the Company that something similar would not happen in the future." *Id.* at Interrante-000083.

## II.   SUMMARY JUDGMENT

### A.   Standard

Summary judgment is properly granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are material if they "might affect the outcome of the suit under the governing law." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute as to those facts is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248). "We view all the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Id.* (internal quotation marks and citation omitted).

The party moving for summary judgment must first "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial."

*Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252). Where, as here, "the non-moving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (internal quotation marks and citation omitted); *see also Hollingsworth v. R. Home Prop. Mgmt., LLC*, 498 F. Supp. 3d 590, 600 (E.D. Pa. 2020).

## B. Disparate Treatment Claim

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "[A]n employer can unlawfully discriminate within the meaning of the ADA in two different ways . . . : (1) if the employer takes adverse action against a qualified individual with a disability and that decision was motivated by the individual's actual disability or the employer's belief that the individual had a disability (i.e. disparate treatment); or (2) if the employer fails to make reasonable accommodations for that individual." *Isley v. Aker Phila. Shipyard, Inc.*, 275 F. Supp. 3d 620, 626 (E.D. Pa. 2017) (internal quotation marks and citation omitted). Interrante raises claims under both theories.[1] We focus first on his "disparate treatment" claim.

Disability discrimination claims proceed under the burden-shifting framework of

---

[1] Interrante raises identical claims under the PHRA. "The PHRA is basically the same as the ADA in relevant respects and Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts." *Hollingsworth*, 498 F. Supp. 3d at 611 (internal quotation marks and citation omitted). "The resolution of Plaintiff's ADA claims therefore also disposes of his PHRA claims." *Id.*

5

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  "Under this framework, a plaintiff bears the burden to prove a *prima facie* discrimination case by establishing that: she has a disability, she was qualified for an employment position with or without a reasonable accommodation, and she suffered an adverse employment action because of her disability." *Hatch v. Franklin Cnty.*, 755 F. App'x 194, 198 (3d Cir. 2018) (citation omitted).  If the plaintiff carries that burden, "the defendant then bears the burden to produce a legitimate, non-discriminatory reason for the adverse employment action." *Id.* (citation omitted).  If the defendant meets their burden, the plaintiff must "demonstrate that the defendant's purported reason was really pretext for discrimination." *Id.* (citation omitted).

"Regarding pretext, a plaintiff . . . may defeat a motion for summary judgment by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Id.* (emphasis in original) (citation omitted).  "A plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Id.* (emphasis in original) (internal quotation marks and citation omitted).

Here, Interrante alleges that he was terminated because of his learning disability, while Merck maintains that Interrante was terminated because of "his egregious violation of Merck's zero-tolerance safety policy." *Compare* Compl. ¶¶ 64–66, ECF No. 1, *with* Def.'s Mem. Summ. J. 7, ECF No. 36-1.  Even assuming, *arguendo*, that Interrante has stated a *prima facie* case of disparate treatment, he has not shown pretext.  Stated differently, Interrante "has failed to provide

evidence that would allow a factfinder to disbelieve [Merck's] non-discriminatory reason for firing [him] or to determine that discrimination was more likely than not a motivating or determinative cause of [his] termination." *Hatch*, 755 F. App'x at 199 (internal quotation marks and citation omitted); *see, e.g.*, *Lassiter v. Children's Hosp. of Phila.*, 131 F. Supp. 3d 331, 352 (E.D. Pa. 2015) (finding that plaintiff "has not adduced evidence to establish pretext" and entering summary judgment on that basis).

Interrante attempts to show pretext by offering comparator evidence. He points to Bundt and Proctor, two non-disabled colleagues who also "engaged in dangerous behavior" but were not terminated. *See* Pl.'s Opp'n 15, ECF No. 41-1. "To be proper comparators, these other employees must have been similarly[] situated in all respects." *Hatch*, 755 F. App'x at 199 (internal quotation marks and citation omitted). "Appropriate comparators might be . . . employees [who] dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Klina v. Se. Pa. Transp. Auth.*, No. 10-5106, 2011 WL 4572064, at *8 (E.D. Pa. Oct. 3, 2011) (internal quotation marks and citation omitted).

Bundt and Proctor are not appropriate comparators. Neither Bundt nor Proctor physically entered the trash compactor. Their "infractions . . . were serious, but qualitatively different" from the conduct that prompted Interrante's termination. *Wright v. Providence Care Ctr., LLC*, 822 F. App'x 85, 93 (3d Cir. 2020); *see also Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) ("[W]hile 'similarly situated' does not mean identically situated, purported comparators must have committed offenses of 'comparable seriousness.'" (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006))). Simply put, there is "no evidence from which a jury could conclude" that Interrante, Bundt, and Proctor were similarly situated. *Abdul-Latif v. Cnty.*

7

*of Lancaster*, 990 F. Supp. 2d 517, 526 (E.D. Pa. 2014).  And because Interrante offers no other evidence to suggest pretext, summary judgment is appropriate on his disparate treatment claim.[2]

### C. Retaliation Claim

Interrante also alleges that Merck terminated his employment because he requested accommodations for his learning disability.  *See* Compl. ¶ 59.  "Prohibited discrimination under the ADA includes retaliation against an employee for requesting an accommodation."  *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010) (citation omitted).

"A 'pretext' claim of illegal retaliation follows the familiar burden shifting analysis . . . set forth in *McDonnell Douglas*."  *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003).  Even assuming, *arguendo*, that Interrante has stated a *prima facie* case of retaliation,[3] he cannot show pretext.  As described above, Merck "clearly had a sufficient basis to terminate Plaintiff by virtue of his work performance and conduct."  *Hollingsworth*, 498 F. Supp. 3d at 611. In violation of Merck's safety policy and his supervisor's instructions, Interrante climbed into an energized trash compactor.  "Given those clear facts, no reasonable jury could find that retaliation 'had a determinative effect' on [Merck's] decision to terminate" Interrante.  *Id.* (quoting *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 236 n.11 (3d Cir. 2013)).  Summary judgment is therefore warranted

---

[2]    Though not dispositive, the "fact that Plaintiff's termination was upheld by an undisputedly neutral arbitrator who had the power to prevent the termination is highly probative of the absence of discriminatory intent in that termination."  *Edwards v. Merck & Co., Inc.*, No. 05-373, 2006 WL 1030281, at *3 (E.D. Pa. Apr. 18, 2006) (internal quotation marks and citation omitted); *see also Noel v. Boeing Co.*, No. 09-3613, 2011 WL 4389547, at *7 (E.D. Pa. Sept. 21, 2011) ("The arbitrator's determination that [plaintiff's] discharge was for just cause also supports the Court's conclusion that [defendant's] proffered reasons were not pretextual." (citations omitted)).

[3]    "To establish a prima facie case of retaliation, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."  *Kieffer v. CPR Restoration & Cleaning Serv., LLC*, 200 F. Supp. 3d 520, 535 (E.D. Pa. 2016) (internal quotation marks and citation omitted).

on Interrante's retaliation claim.

### D.     Failure to Accommodate Claim

Interrante finally claims that Merck failed to accommodate his learning disability.  "An employer commits unlawful discrimination under the ADA if the employer does 'not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer].'"  *Hollingsworth*, 498 F. Supp. 3d at 609 (quoting 42 U.S.C. § 12112(b)(5)(A)).  "A plaintiff bringing an ADA failure-to-accommodate claim must establish: (1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated."  *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (internal quotation marks and citation omitted).

Interrante's claim fails on the fourth prong.  He must show "that the accommodations that he contends were requested and denied would have rendered him capable of performing the essential functions of his job."  *Stadtmiller v. UPMC Health Plan, Inc.*, 799 F. Supp. 2d 492, 513 (W.D. Pa. 2011) (citing *Stanley v. Lester M. Prange, Inc.*, 25 F. Supp. 2d 581, 584 (E.D. Pa. 1998)); *see also Bielich v. Johnson & Johnson, Inc.*, 6 F. Supp. 3d 589, 617 (W.D. Pa. 2014) ("It is the employee's burden to show that accommodations existed that would have rendered her capable of performing the essential functions of the job.").  That is, he "must supply evidence sufficient [to] allow a jury to conclude that reasonable accommodations could or should have been fashioned that would have allowed him to perform [his job] in a manner that would meet or exceed [the employer's] legitimate expectations and satisfy the essential functions of that position."

*Stadtmiller*, 799 F. Supp. 2d at 513 (internal quotation marks and citation omitted).

Interrante takes issue with Merck's failure to provide him with daily task lists and more complete training on how to use the trash compactor.[4] Neither accommodation, however, would have enabled Interrante "to perform his duties in a manner satisfactory to his employer." *Id.* at 515. Interrante understood Merck's safety policy, *see* Interrante Dep. 146:2–24; was told to not operate the trash compactor when it jammed, *see id.* at 184:5–11; and *still* climbed into the compactor in violation of these directions and despite several warning signs affixed to the machine. *See id.* at 161:10–162:20, 166:18–167:3.

"An employee," like Interrante, "who violates a company policy which results in that

---

[4] Interrante also argues that Merck "failed to engage in the interactive process . . . required by the ADA after a request for accommodation is made." Pl.'s Opp'n 18.

"To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Gardner v. SEPTA*, 410 F. Supp. 3d 723, 743 (E.D. Pa. 2019) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319–20 (3d Cir. 1999)).

Interrante claims that Merck "utterly failed to engage in the interactive process," but the record does not support that argument. Pl.'s Opp'n 18. "[A]n employer can show its good faith in many ways, such as: meeting with the employee; requesting information about the employee's condition and limitations; asking the employee what accommodation she wants; showing some sign of having considered her request; and offering and discussing available alternatives when the request is too burdensome." *Ruggiero v. Mount Nittany Med. Ctr.*, 736 F. App'x 35, 39 (3d Cir. 2018) (citing *Taylor*, 184 F.3d at 317). Here, the evidence shows that Merck considered Interrante's multiple accommodation requests. *See, e.g.*, DSOF ¶ 34; PRSOF ¶ 34. Merck did not "merely dismiss [Interrante's] request[s] out of hand as unreasonable." *Bernhard v. Brown & Brown of Lehigh Valley, Inc.*, 720 F. Supp. 2d 694, 701 (E.D. Pa. 2010). Instead, Merck's occupational health nurse practitioner conferred with Interrante and even reached out to Dr. Masey to further discuss his report. *See* Interrante Dep. 118:2–18; *see also* Interrante Dep. Def.'s Ex. 10, at DEF01497, ECF No. 36-7. Moreover, Interrante's repeated contention that Merck failed "to discuss alternatives to Dr. Masey's recommended accommodations" is made without citation to the record. Pl.'s Opp'n 6, 18; *see also* PRSOF ¶ 29.

employee's discharge is not meeting the employer's legitimate expectations." *Nelson v. DeVry, Inc.*, No. 07-4436, 2009 WL 1213640, at *6 (E.D. Pa. Apr. 23, 2009) (citation omitted). And there is simply no basis from which to conclude that additional accommodations would have enabled Interrante to meet Merck's legitimate expectations. *See Stadtmiller*, 799 F. Supp. 2d at 515 (entering summary judgment against employee where "the record does not support the proposition that his performance would have improved had he been given additional accommodations"); *see also Bielich*, 6 F. Supp. 3d at 617–18 ("Summary judgment can be granted in favor of the employer where the employee's proposed accommodations would be clearly ineffective." (citing *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 670 (3d Cir. 1999))). The arbitrator may have put it best: "The record reveals that [Merck] . . . made good faith attempts to . . . reevaluate [Interrante's] limitation, however, nothing was shown that would have prevented the April 19, 2018 incident or assure [Merck] that something similar would not happen in the future." Def.'s Mem. Ex. B, at Interrante-000083; *see also* Def.'s Mem. Summ. J. 11. Summary judgment is therefore appropriate on this claim.

### III. CONCLUSION

Summary judgment is warranted in Merck's favor because a reasonable jury could not conclude that Interrante experienced discrimination or retaliation in violation of the ADA or the PHRA. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge